UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 5:14-106-WOB-CJS

CHARLES ALLEN WELLS, JR.                                              PLAINTIFF


v.                          **REPORT AND RECOMMENDATION**


CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY                                  DEFENDANT


* * * * * * * * * *

Plaintiff Charles Allen Wells, Jr. brings this action under 42 U.S.C. § 405(g), challenging

Defendant Commissioner's final decision denying his application for benefits under the Social

Security Act.  This matter has been referred to the undersigned for preparation of a Report and

Recommendation under 28 U.S.C. § 636(b)(1)(B).  At issue is whether the Administrative Law

Judge (ALJ) erred in finding Plaintiff "not disabled" and therefore not entitled to benefits. As

explained below, the ALJ's decision was not supported by substantial evidence.  For the reasons

explained herein, it will be recommended that the Plaintiff's Motion for Summary Judgment (R. 7)

be **granted**, and the Commissioner's Motion for Summary Judgment (R. 9) be **denied**.

I.      STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the

reviewing court are whether the ALJ applied the correct legal standards and whether the decision is

supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009).  The findings of the Commissioner are not

subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id.* (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id.* (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that he is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that he is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (*citing* 20 C.F.R. §§ 404.1520(b), 416.920(b)). Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate that he suffers from a severe impairment. *Id.* at 803-04. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id.* at 804 (*citing* 20 C.F.R. §§ 404.1520(c), 416.920(c)). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least

12 months, and the impairment meets or equals a listed impairment located at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. *Id.* (*citing* 20 C.F.R. §§ 404.1520(d), 416.920(d)). Fourth, the claimant is not disabled if his impairment(s) does not prevent him from doing his past relevant work. *Id.* Lastly, even if the claimant cannot perform his past relevant work, he is not disabled if he can perform other work which exists in the national economy. *Id.* (*citing Abbott*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id.* (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Charles Allen Wells, Jr., has an alleged disability onset date of January 1, 2005, when he was 30 years old. (Administrative Record (A.R.) 221).[1] Plaintiff has an eighth-grade education, and has past relevant work experience as a dishwasher, general laborer, and sign holder. (*Id.* at 37, 227). On June 18, 2010, Plaintiff filed applications for disability insurance benefits and supplemental security income. (*Id.* at 15). Plaintiff alleges that his ability to work is limited by difficulty breathing, difficulty being around other people, Obsessive Compulsive Disorder, and other issues related to a previous open heart surgery. (*Id.* at 226). Plaintiff also testifies to shoulder, back, and knee pain. (*Id.* at 46, 47).

Plaintiff's applications were denied initially and again upon reconsideration. (*Id.* at 15). At Plaintiff's request, a hearing was held in front of an Administrative Law Judge (ALJ) on May 17,

---

[1] Although Plaintiff is referred to in Plaintiff's briefing on two occasions as "Mr. Carson," the Court recognizes, after an examination of the record, that this error is likely typographical.

3

2012. (*Id.*). Plaintiff appeared and testified at the hearing, where the ALJ also heard testimony from an impartial vocational expert (VE). (*Id.*). After receiving testimony and reviewing the record, the ALJ issued a written decision on May 21, 2012, finding Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 12-25).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled. (*Id*. at 16-17). *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ determined that Plaintiff had not engaged in gainful employment since January 1, 2005–the alleged onset date of his disability.[2] (*Id.* at 17). The ALJ acknowledged that although the Plaintiff had been employed after the alleged disability onset date, this work could not be considered substantial gainful activity. *(Id.)*. At step two, the ALJ found that the Plaintiff had the following severe impairments: "congenital cardiac defect with possible pulmonary abnormalities and disease of the aortic valve, right shoulder pain with decreased range of motion likely secondary to biceps and rotator cuff tendinitis due to acromioclavicular joint dislocation, organic mental disorder, affective disorder, anxiety disorder, and personality disorder." (*Id.* at 18). At step three, the ALJ analyzed Plaintiff's impairments individually and in combination, and found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the level of severity set forth in any of the Listing of Impairments under the applicable Federal Regulations. (*Id.* at 19).

The ALJ next considered the evidence and determined at step four that Plaintiff had the residual functional capacity (RFC) to perform less than the full range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). (*Id.* at 21). Specifically, the ALJ stated:

---

[2] The ALJ found Plaintiff met the insured status requirements of the Social Security Act through September 30, 2009. (A.R. 17).

4

> [C]laimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c), including lifting fifty pounds occasionally and twenty-five pounds frequently, standing or walking about six hours in an eight-hour day, and sitting about six hours in an eight-hour day**,** except with no more than frequent pushing or pulling with the right upper extremity and no more than frequent lifting overhead with the upper right extremity. The claimant has borderline intellectual functioning, but would be able to understand, remember, and carry out instructions for simple tasks with oral instructions or initial demonstration, maintain concentration and attention for two hour segments over an eight-hour work day, respond appropriately in a nonpublic work environment where contact with coworkers and supervisors is casual and infrequent, and adapt to gradual routine changes in the work environment.

(*Id.*).

Based on his RFC determination, the ALJ found that the Plaintiff could not perform his past relevant work. (*Id.* at 23-24). At step five, the ALJ heard testimony from an impartial VE and adopted his opinion that given an individual of Plaintiff's age, education, work experience, and RFC cited above, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including representative unskilled occupations like bench assembly and machine tending. (*Id.*). Accordingly, the ALJ determined that the Plaintiff was not "disabled" for social security purposes. (*Id.* at 25).

Plaintiff appealed the ALJ's decision to the Appeals Council. (*Id.* at 7). On July 23, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's May 21, 2012, decision the final decision of the Commissioner. (*Id.*). On March 20, 2014, having exhausted all other administrative remedies, Plaintiff timely filed a Complaint asserting that the ALJ's decision was not supported by substantial evidence (R. 1).[3] Plaintiff and Commissioner have filed Motions

---

[3] Although a claimant has 60 days after the denial of his appeal to file a civil action, here, by letter dated February 24, 2014, the Appeals Council granted Plaintiff's request for an additional 30 days to file his appeal. (A.R. 1-2). Thus, Plaintiff's Complaint, filed March 20, 2014, is timely.

for Summary Judgment.  (R. 7, 9).  Plaintiff presents two arguments for review: (1) the ALJ erred

at step three in finding that Plaintiff's impairments did not meet or equal listing 12.05(C) and (2) the

RFC is not supported by substantial evidence.

## III.    ANALYSIS

### A.    The ALJ's finding that Plaintiff did not meet Listing 12.05(C) is not supported by substantial evidence.

Plaintiff contends that the ALJ erred at step three of the sequential process when he

concluded that Plaintiff did not meet Listing 12.05(C).  (R. 8, at 8).  Plaintiff argues that he meets

the criteria of Listing 12.05(C), and is therefore entitled to a finding of disability at step three of the

five-step sequential evaluation process.  (*Id.*).  The Commissioner contends the ALJ's decision is

supported by substantial evidence.  (R. 9, at 9).

To demonstrate that he meets or medically equals Listing 12.05, a claimant must demonstrate

that he satisfies the "diagnostic description" in the introductory paragraph, which requires,

"significantly subaverage general intellectual functioning with deficits in adaptive functioning

initially manifested during the developmental period; i.e., the evidence demonstrates or supports

onset of the impairment before age 22."  *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20

C.F.R. Pt. 404, Subpt. P., App. 1, § 12.05.  In other words, to meet the "diagnostic description," a

claimant must demonstrate three factors: (1) subaverage intellectual functioning; (2) onset before

age twenty-two; and (3) adaptive-skills limitations.  *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x

672, 675 (6th Cir. 2009).  In addition, a claimant must also satisfy "any one of the four sets of

criteria" in Listing 12.05.  *See Foster*, 279 F.3d at 354 ("[A] claimant will meet the listing for mental

retardation only if the [claimant's] impairment satisfies the diagnostic description in the introductory

paragraph *and* any one of the four sets of criteria. . . .") (quotations omitted) (emphasis in original). Here, Plaintiff alleges he meets the criteria of part (C), which requires, "A valid verbal, performance, or full scale IQ of 60 through 70" as well as "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).

When a claimant satisfies the requirements of a listing, a finding of disabled is mandatory. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The plaintiff has the burden of proof to demonstrate that "he has or equals an impairment" listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. "For a claimant to show that his impairment matches a listing, claimant must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Indeed, a lack of such evidence provides substantial evidence to support a finding that a plaintiff does not meet the listing. *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) (*citing Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987)).

Here, the ALJ concluded Plaintiff did not meet Listing 12.05(C), providing the following analysis in support:

> The claimant's full-scale IQ on the Wechsler Adult Intelligence Scale, third edition, was 61. However, State agency psychologists who reviewed the records noted that the claimant did not have the required adaptive deficits. The examining psychologist, Dr. Sprague, noted, "Significant falling off scores were noted in tasks requiring fund of knowledge as well as general knowledge." Results of the Wide Range Assessment Test, third edition, showed reading at the third-grade level, spelling at the kindergarten level, and math computation at the first grade level. School records were not available. Although the claimant testified that he has been incarcerated most of his adult life, the claimant's earning record shows wages of $7,469 in 1998 with $5,225.01 from one employer, Vinery LLC in Paris, Kentucky. A friend reported that although the claimant does not understand things right off, his hobbies

7

include playing chess and cards.  The claimant also reported that his hobbies include playing chess and cards.

(A.R. 19-20).

Plaintiff argues that he meets each requirement of Listing 12.05(C), and points to evidence in the record in support.  (R. 8, at 8-12).  The Commissioner does not contest that Plaintiff meets the additional criteria listed under part C.  (R. 9, at 8).  The Plaintiff meets the first requirement of part C of the Listing because he has a valid verbal, performance, or full scale IQ score of 60 through 70.  (A.R. 19, 308).  The Plaintiff also meets the second requirement of part C, which requires him to have "a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).  At step two of the sequential process, the ALJ found that Plaintiff had the severe impairments of congenital cardiac defect with possible pulmonary abnormalities and disease of the aortic valve, right shoulder pain with decreased range of motion, rotator cuff tendinitis, organic mental disorder, affective disorder, anxiety disorder, and personality disorder. (A.R. 18).  At step four, the ALJ determined that Plaintiff's impairments limited him to less than the full range of medium work and precluded him from performing his past relevant work at the "medium to heavy" exertional level.  (*Id.* at 24).  This assigned reduction in work activities satisfies the "additional and significant work-related limitation of function" requirement of Listing 12.05(C).  *See Mowery v. Heckler*, 771 F.2d 966, 972 (6th Cir. 1985) (finding that the claimant's physical impairments that inhibited him from performing his past work of heavy, unskilled labor and limited him to light work with restrictions were "significant").

Instead, the Commissioner argues that Plaintiff does not meet the diagnostic description of Listing 12.05 because he failed to demonstrate deficits in adaptive functioning, and further, because

he failed to demonstrate that these deficits manifested before age 22. (R. 9, at 9). Plaintiff contends the evidence of record satisfies both requirements, and argues the ALJ's decision to the contrary is not supported by substantial evidence. Each requirement will be discussed, in turn, below.

### 1. Deficits in adaptive functioning.

According to the American Psychiatric Association's *Diagnostic & Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-V, "deficits in adaptive functioning" is an element of the definition of intellectual disability. *See* DSM-V, at 33. To diagnose a claimant with mild intellectual disability, the medical source must determine the claimant has deficits in adaptive functioning consistent with a professional organization's definition of intellectual disability. *See Davis v. Colvin*, No. 2:10-cv-88, 2015 WL 3504984, at *3 (M.D. Tenn. May 28, 2015); DSM-V, at 33 (listing the diagnostic criteria for intellectual disability, which requires: deficits in intellectual functioning; deficits in adaptive functioning; and onset during the developmental period).

Adaptive functioning refers to "how well a person meets community standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background" and accounts for "adaptive reasoning in three domains: conceptual, social, and practical." DSM-V, at 37. A person demonstrates deficits in adaptive functioning "when at least one domain of adaptive functioning–conceptual, social, or practical–is sufficiently impaired that ongoing support is needed in order for the person to perform adequately in one or more life settings at school, at work, at home, or in the community." DSM-V, at 38.

Here, Plaintiff was diagnosed with mild mental retardation[4] by consultative examiner Dr. Dennis B. Sprague. (A.R. 308). Dr. Sprague performed a consultative examination of Plaintiff on September 14, 2010. (*Id.* at 303). The Plaintiff obtained a full-scale IQ score of 61 on the Wechsler Adult Intelligence Scale–Fourth Edition ("WAIS-IV"). (*Id.* at 306). Dr. Sprague concluded Plaintiff "would be described as presently functioning within the mild range of mental retardation," consistent with his full-scale IQ of 61. (*Id.*).

Dr. Sprague also opined that Plaintiff suffered from moderate impairments in multiple areas, including communication, social and interpersonal skills, and work. (*Id.* at 308). Specifically, Dr. Sprague's report found that Plaintiff's ability to deal with rapid change was moderately impaired. (*Id.*). Dr. Sprague found "moderate to marked" limitations in the following areas: ability for sustained concentration and attention; ability to handle the stressors of everyday living; ability to relate to others without exhibiting behavioral extremes; and ability to follow complex directions along with complex task functions. (*Id.*). Dr. Sprague further opined that Plaintiff's ability to deal with complex tasks in the work arena was markedly impaired, although he noted that Plaintiff's ability to follow simple directions and simple repetitive activities was none-to-mildly impaired. (*Id.*).

However, the ALJ ignored Dr. Sprague's findings, and instead concluded Plaintiff did not have the required adaptive deficits. (*Id.* at 19). In his decision, the ALJ relies on the opinions of the state agency psychologists who reviewed the records. The ALJ states, without citation to the record, that the reviewing psychologists "found that the claimant did not have the required adaptive

---

[4] As the Commissioner noted, the term "mental retardation" in Listing 12.05(C) has been replaced with the term "intellectual disability." (R. 9, at 3 n.2). Because the parties' briefs and the Administrative Record use both terms, this Report and Recommendation will continue using the terms interchangeably.

deficits." (A.R. 19).  To the extent the ALJ suggests that Plaintiff must show significant or marked

deficits in adaptative functioning, the plain language of Listing 12.05–which requires "deficits in

adaptive functioning"–does not specify how severe the deficits must be.  *Hill v. Comm'r of Soc. Sec.*,

No. 1:14-cv-204, 2015 WL 105097, at *8 (S.D. Ohio Jan. 7, 2015).  Moreover, the ALJ's

characterization of the reviewing psychologists' conclusions is not supported by the Court's review

of their reports.

In November 2010, Dr. Ilze Sillers, a nonexamining consultative psychiatrist, reviewed the

administrative record and determined Plaintiff had adaption limitations, explaining that his ability

to respond appropriately to changes in the work setting was moderately impaired.  (*Id.* at 93).  Dr.

Sillers went on to give great weight to the opinions of consultative examiner Dr. Sprague regarding

Plaintiff's mild to moderate restrictions.  However, Dr. Sillers gave little weight to Dr. Sprague's

opinions regarding marked restrictions, concluding without explanation or citation to the record that

these opinions were "not supported by the preponderance of the evidence."  (*Id.* at 94).  A second

nonexamining consultative psychologist, Dr. Lea Perritt, made identical findings in February 2011.

(*Id.* at 120-21).

According to the Commissioner's Program Operations Manual System ("POMS"), the

judgment of a medical consultant or psychological consultant "is necessary to affirm that adaptive

functioning is consistent with IQ test results."  *See* SSA, DI 24515.056(D)(2) Evaluation of Specific

Issues–Mental Disorders–Determining Medical Equivalence (Sept. 2012), *available at*

https://secure.ssa.gov/apps10/poms.nsf/lnx/0424515056.  An ALJ may not simply substitute his own

judgment for that of a medical source where, as here, the judgment of the medical consultant or

psychological consultant is "necessary" to an assessment of adaptive functioning.  *Davis v. Colvin*,

No. 2:10-cv-88, 2015 WL 3504984, at *4 (M.D. Tenn. May 28, 2015). Instead, the ALJ must weigh the consultant's opinion using the factors set forth in 20 C.F.R. §§ 404.1527(c), 416.927(c). These factors include: "the examining relationship (or lack thereof), specialization, consistency, and supportability." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (*citing* 20 C.F.R. § 404.1527(c)).

As the Court noted above, the ALJ's analysis completely ignores Dr. Sprague's diagnosis of mild mental retardation with his accompanying findings of adaptive deficits. A diagnosis of mild mental retardation is not a necessary prerequisite to satisfy Listing 12.05, however its absence is probative for a 12.05(C) determination. *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) (*citing Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 452 (6th Cir. 2007)). Evidence that Plaintiff was diagnosed with mild mental retardation, which by definition requires deficits in adaptive functioning, indicates that Plaintiff would satisfy the diagnostic description of Listing 12.05. However, the ALJ ignored this evidence. At a minimum, the ALJ was required–but failed–to "determine how much weight is appropriate [to the medical source] by considering a number of factors." *Blakley*, 581 F.3d at 407. The ALJ's failure to adequately discuss medical opinions in the record "denotes a lack of substantial evidence." *Id.*

The ALJ's analysis also refers to evidence that claimant's hobbies include playing chess and cards. (A.R. 19-20). It is unclear from the ALJ's reference how evidence of the claimant's hobbies was relevant to his analysis under 12.05. To the extent the ALJ considers Plaintiff's hobbies as evidence of adaptive functioning inconsistent with a finding of disability under 12.05(C), his conclusion ignores extensive evidence to the contrary.

12

The regulations permit the ALJ to question the validity of test results in conjunction with other factors.  "In assessing the validity of a claimant's IQ, '[i]nformation from both medical and nonmedical sources may be used to obtain detailed descriptions of the individual's activities of daily living; social functioning; concentration, persistence and pace; or ability to tolerate increased medical demands (stress).'" *Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 462-63 (6th Cir. 2012) (*quoting Brown v. Sec'y of Health & Human Servs.*, 948 F.2d 268, 269 (6th Cir. 1991)).  However, the fact that a plaintiff can perform mundane activities does not negate a valid IQ score.

In *Brown*, the Sixth Circuit held that a valid IQ score was not mutually exclusive of the plaintiff's ability and independence to complete daily activities.  948 F.2d at 270.  There, the commissioner argued that the plaintiff's IQ score of 68 was inconsistent with his functional abilities because he could use public transit; had a driver's license; could make change at a grocery store; could do his own laundry and clean his room; had completed the sixth grade; had a limited level of reading comprehension; and had been employed as a truck driver where he recorded his mileage, the hours he worked, and the places he drove.  *Id.*  The Sixth Circuit concluded that those activities were not inconsistent with a valid IQ test.  (*Id.*).

According to the DSM-V, a person with mild intellectual disability "may function age-appropriately in personal care [but] need some support with complex daily living tasks in comparison to peers." DSM-V, at 34.  "[S]upports typically involve grocery shopping, transportation, home and child-care organizing, nutritious food preparation, and banking and money management."  *Id.* "Recreational skills resemble those of age-mates, although judgment related to well-being and organization around recreation requires support."  *Id.*

Evidence in the record of Plaintiff's daily living indicates he has deficits in adaptive functioning consistent with mild intellectual disability. For example, Plaintiff has difficulties getting along with others, and limitations in his "ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." (A.R. 105, 120, 235). Although Plaintiff can count change (*id.* at 241, 250), he cannot manage his own funds (*id.* at 241, 250, 308). Plaintiff testified that he occasionally watches TV and helps with routine household chores, however his wife did most of the housework. (*Id.* at 63-66).

Here, although the ALJ did not explain his analysis in any depth, he appears to have relied on Plaintiff's hobbies of playing chess and cards as evidence of adaptive functioning inconsistent with a disability under Listing 12.05. But the fact that Plaintiff can play chess and cards is not inconsistent with a finding of deficits in adaptive functioning because these "recreational skills resemble those of age-mates." *Id.* Moreover, neither of Plaintiff's hobbies appear to involve activities as complex as those accomplished by the plaintiff in *Brown*.

The ALJ also cryptically refers to records that Plaintiff had earnings in 1998 of $7,469.61. (A.R. 19). The Listings generally provide that work experience is not a relevant factor when determining whether a plaintiff meets or equals a listed impairment. *See* 20 C.F.R. §§ 404.1520, 416.920 ("If you have an impairment(s) which . . . is listed in Appendix 1, we will find you disabled without considering your age, education, and work experience."). However, the Sixth Circuit has considered a plaintiff's past work experience as a factor in determining whether the plaintiff has demonstrated a level of adaptive functioning inconsistent with a finding of disability under Listing 12.05(C). *See, e.g., Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 587 (6th Cir. 2013); *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 721 (6th Cir. 2012); *Carmack v. Barnhart*, 147 F. App'x

14

557, 560-61 (6th Cir. 2005).  When reviewing a plaintiff's work history for evidence of adaptive functioning, courts have considered the relative complexity of the plaintiff's prior work, *see Carmack*, 147 F. App'x at 560-61, as well whether the plaintiff stopped working due to mental deficiencies or for other reasons. *See Carter v. Comm'r of Soc. Sec.*, 2012 WL 1028105, at \*6-7 (W.D. Mich. Mar. 26, 2012).  Here, the ALJ neglects to address the circumstances of Plaintiff's employment.  The ALJ's unexplained comment on Plaintiff's past earnings fails to provide an evidentiary basis for the ALJ's conclusion.

### 2.    Onset during the developmental period.

Evidence of adaptive deficits, alone, does not satisfy the diagnostic description.  Plaintiff must also demonstrate that these deficiencies arose during the developmental period. *See Foster*, 279 F.3d at 355.  "Adaptive functioning is different from intellectual functioning," and Plaintiff must demonstrate that "he had adaptive functioning deficits during his developmental period" to satisfy the diagnostic description under 12.05. *Peterson v. Astrue*, 552 F. App'x 533, 540 (6th Cir. 2014).  "While the claimant may use a qualifying IQ score before the age of 22 to demonstrate that his subaverage intellectual functioning initially manifested during his developmental period . . . a claimant is by no means required to produce an IQ score obtained prior to age 22." *West*, 240 F. App'x at 698 (citations omitted).

Plaintiff argues, without citation, that the requirements of the introductory paragraph of 12.05 have been met because Dr. Sprague's diagnosis of mild mental retardation gives rise to a presumption that Plaintiff's deficits initially manifested during the "developmental period," i.e. before age 22.  (R. 8, at 9)  However, the Sixth Circuit has rejected this very argument.  In *Turner v. Commissioner of Social Security*, the Sixth Circuit explicitly rejected a claimant's argument that

15

a diagnosis of mild mental retardation was alone sufficient to show that the claimant suffered functional deficits during his developmental period.  381 F. App'x 488, 491 (6th Cir. 2010).  The Court explained a plaintiff's "present IQ scores do not serve as evidence that he suffered subaverage intellectual functioning or deficits in his adaptive functioning during his developmental period.  A claimant must produce evidence beyond his present IQ scores to show that he exhibited deficits during his developmental period."  *Id.* at 491-92 (*citing Foster*, 279 F.3d at 345-55; *West*, 240 F. App'x at 698) (footnotes omitted)).

Although Plaintiff's presumption argument lacks merit, Plaintiff did present evidence beyond his present IQ scores that the ALJ failed to consider. Here, the ALJ notes without explanation that Plaintiff's school records were not available, apparently to support his conclusion that Plaintiff's intellectual and adaptive deficits did not manifest prior to age 22.  (A.R. 19).[5]  However, the ALJ failed to consider Plaintiff's testimony that he was in special education classes and dropped out of school by the 9th grade.  (A.R. 227, 289).  Enrollment in special education classes is relevant to a determination of intellectual disability for purposes of § 12.05.  *Green v. Comm'r of Soc. Sec.*, No. 1:08-CV-768, 2009 WL 1874176, at * 5 (W.D. Mich. June 25, 2009).  The ALJ also noted, without explanation, that results from testing showed Plaintiff can read at the third grade level, spell at the kindergarten level, and had math computation skills at the first grade level.  (A.R. 19).  Plaintiff's failure to advance beyond a third-grade reading level and his functional illiteracy despite having

---

[5] Although the administrative record does not contain Plaintiff's school records, a notation on a return form from Jefferson County Schools dated October 20, 2010, states, "Prior to 2006 per [first name illegible] Fields[,] ECE Records maintained in another office."  (A.R. 318).  The Court notes the notation so that on remand, the Commissioner may make appropriate efforts to seek these records, if such efforts have not already been made.

completed the eighth grade would arguably provide some evidence of deficits in adaptive functioning prior to the age of 22. *See Davis*, 2015 WL 3504984, at *24.

In sum, the ALJ's conclusory analysis does not provide the Court with any basis on which to engage in a meaningful review of his determination that Plaintiff's impairments did not meet Listing 12.05(C). Thus, the ALJ's opinion at step three of the sequential analysis is not supported by substantial evidence, and this case should therefore be remanded.

**3.     The ALJ fails to discuss Plaintiff's medical equivalency to listing 12.05(C).**

Plaintiff also takes issue with the ALJ's failure to assess whether Plaintiff's impairments medically equal listing 12.05(C). (R. 8, at 11). A claimant must present medical findings equal in severity to all the criteria for the one most similar listed impairment. 20 C.F.R. §§ 404.1526(a), 416.926(a). "A claimant does not qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531. Although the Commissioner argues that satisfying medical equivalence is difficult, it remains the responsibility of the ALJ to make this determination at the disability hearing. (R. 9, at 10); 20 C.F.R. §§ 404.1526(e), 416.926(e). The ALJ fails to mention medical equivalence in regards to listing 12.05(C). The absence of this discussion also suggests that remand is necessary.

**B.     The RFC is not supported by substantial evidence.**

In addition to his assertion of error at step three, Plaintiff also briefly addresses additional errors by the ALJ at subsequent steps of the sequential analysis. (R. 8, at 12). Although the Court is remanding for further consideration of whether Plaintiff meets or equals Listing 12.05(C), the

Court will also address the alleged errors in subsequent steps so as to provide the ALJ with guidance, should he proceed past step three of the analysis on remand.

### 1.   The RFC fails to include all of Plaintiff's impairments.

Plaintiff claims that the ALJ's RFC determination is not supported by substantial evidence because it fails to properly account for his well-supported limitations that correspond with his impairments. (R. 8, at 12-13). Specifically, Plaintiff contends the ALJ failed to account for his right arm and shoulder limitations and his knee arthritis. (*Id.* at 12).

The RFC is assessed using all relevant medical and other evidence. 20 C.F.R. §§ 404.1545, 416.945. The impairments and symptoms the claimant suffers from may cause physical and mental limitations that affect what the claimant can do in a work setting; therefore, the determined RFC is the most the claimant can do despite those limitations. *Id.* When the plaintiff has a severe impairment, but the impairment does not meet or equal a listed impairment, the ALJ will consider the limiting effects of all the impairments, even those that are not severe, in determining the RFC. 20 C.F.R. §§ 404.1545(e), 416.945(e). This assessment made by the ALJ is of the plaintiff's limitations on what he can or cannot do, not of what he suffers from. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

The mere diagnosis of a condition does not automatically establish work-related limitations. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Therefore, the ALJ's determination of a severe impairment may or may not affect the RFC. *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). To determine if a limitation existed, an ALJ must "consider all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p; SSR 96-7p.

18

Thus, a plaintiff has the burden to prove, through evidence, that a limitation does exist.  However, failure to include medically evidenced impairments in an RFC calculation suggests that the ALJ's finding is not supported by substantial evidence.  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009).

At step two of the sequential analysis, the ALJ determined that Plaintiff had the severe impairment of "right shoulder pain with decreased range of motion likely secondary to biceps and rotator cuff tendinitis due to acromioclavicular joint dislocation."  (A.R. 18).  In his RFC determination, the ALJ indicates that the Plaintiff is capable of medium work as defined by 20 C.F.R. § 404.1567(c) and § 416.967(c). (A.R. 21).  This includes "no more than frequent pushing or pulling with the right upper extremity and no more than frequent lifting overhead with the upper right extremity."  (*Id.*).  Plaintiff argues that this finding contradicts the ALJ's own finding of a severe impairment at step two, and also fails to account for the medical evidence of record.  (R. 8, at 13).  The Commissioner counters that the RFC accounted for Plaintiff's shoulder impairments when the ALJ limited Plaintiff to "frequent" use of the upper right extremity.  (R. 9, at 11).  The Commissioner explains that "frequent" is defined in this context as one to two-thirds of the time. (*Id.*).

In his RFC analysis, the ALJ considered the following record evidence of limitation in Plaintiff's right upper extremity: a September 2010 exam revealed limitation of rotation of the right shoulder and reduced grip strength; and records from emergency treatment in October 2011 showed tenderness of soft tissue of limited range of motion.  (A.R. 23).  However, Plaintiff points to other objective medical evidence to support his limitations that the ALJ ignored.  Dr. Burchett, a state consultative examiner, found Plaintiff had a "significantly reduced range of motion in the right

19

shoulder" as well as reduced grip strength in the right hand. (*Id.* at 315). Dr. Upreti diagnosed Plaintiff with rotator cuff syndrome, and noted limited range of motion and right side strength. (*Id.* at 360, 363, 383, 384). Emergency room records from October 2011 show that Plaintiff was diagnosed with cervical radiculopathy. (*Id.* at 399).

While the ALJ may have partially considered Plaintiff's shoulder limitations, his RFC calculation is not supported by a complete analysis of the record evidence. Although the ALJ appears to rely on evidence of Plaintiff's shoulder limitations to support his RFC, further explanation should be made as to how evidence from the record as a whole supports an RFC of medium work.

Plaintiff also argues that the ALJ did not consider evidence of Plaintiff's non-severe osteoarthritis of the knees in his RFC determination. (R. 8, at 12-13). This contention is well-taken. In his analysis, the ALJ fails to consider medical evidence of Plaintiff's osteoarthritis of the knees and its associated limitations. Dr. Burchett, who examined Plaintiff at the request of the Social Security Administration, opined that Plaintiff suffered from osteoarthritis of the knees and right ankle, and noted that Plaintiff limped while ambulating. (A.R. 314). While mere diagnosis of a condition does not automatically establish work-related limitations, *Higgs*, 880 F.2d at 863, the ALJ is required to "consider all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529, 416.929. The ALJ's failure to consider objective medical evidence of impairments at this step indicates that the RFC does not accurately reflect Plaintiff's ability to work and is thus not supported by substantial evidence. *See Howard*, 276 F.3d at 241.

**2.     The ALJ is not required to discuss a claimant's GAF score.**

Plaintiff next argues that the ALJ did not base his decision on substantial evidence because he failed to discuss Plaintiff's Global Assessment Functioning (GAF) score. (R. 8-1, at 13). However, the ALJ did not err in his exclusion of this information. While a GAF score may be instructive to an ALJ in forming the RFC, an ALJ's failure to reference it in his opinion does not make the ALJ's decision inaccurate. *Howard*, 276 F.3d at 241. Furthermore, according to the DSM-V, GAF scores are an outdated indicator of functional ability. *See* DSM-V, at 16. Thus, the ALJ's failure to reference the GAF score, standing alone, does not require remand.

### 3.   The ALJ improperly assessed medical opinions of record.

Finally, Plaintiff takes issue with the ALJ's evaluation of the medical opinions of record. (R. 8-1, at 14). The ALJ is required to consider all medical opinions of record. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 528 (6th Cir. 2014). "Generally, the opinions of treating physicians are given substantial if not controlling, deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citation omitted); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). On the other hand, "[o]pinions from nontreating and nonexamining sources are never assessed for controlling weight." *Gayheart*, 710 F.3d at 376. Instead, the Commissioner weighs these opinions based on the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). When a treating source opinion is not deemed controlling, the ALJ must weigh nontreating and nonexamining opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability. *Id.* Other factors, "which tend to support or contradict the opinion," may be considered in assessing any type of medical opinion. *Id.*; 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).

Here, the ALJ summarized the medical opinions of record as follows:

As for the opinion evidence, no treating source offered an opinion as to physical or mental limitations. As to mental limitations, no weight is given to the opinion of Dr. Sprague that the claimant has moderate to marked impairment of ability to handle stressors and ability to relate to others. The evidence as a whole, including the claimant's testimony as to his usual activities, indicates that the claimant's limitations in these areas is no more than moderate. However, considerable weight is given to Dr. Sprague's opinion that the claimant is "none-to-mildly impaired" as to ability to follow simple directions and accomplish simple tasks. Greater weight is given to the opinion of the State agency psychologists who reviewed the records, Dr. Sillers in November 2010 and Dr. Perrit in February 2011, and concluded that the claimant can understand, remember and carry out simple instructions, can maintain attention and concentration for two hour segments, and can respond appropriated [sic] to supervisors and coworkers but should work with things rather than people. As to physical limitations, greater weight is given to the opinion of Dr. Swan, the State agency physician who reviewed the records in February 2011, that the claimant has the capacity for work at the medium exertion level. However, additional limitations to no more than frequent use of the right upper extremity for pushing, pulling, or overhead reaching, based on objective findings on physical examination in September 2010 and subsequent radiographic and clinical findings.

(A.R. 23).

Plaintiff argues that the ALJ erred in assigning "great weight" to the opinion of non-examining State Agency physician Dr. Swan, who found in February 2011 that the "claimant has the capacity for work at the medium exertional level." (R. 8, at 14). Plaintiff explains that because Dr. Swan's opinion was offered in February 2011, he did not have the opportunity to review Dr. Upreti's treatment notes from November 2011 and January 2012, which included a diagnosis and ongoing treatment for right rotator cuff syndrome. (A.R. 361; 363-64; 384). Similarly, Dr. Swan was not able to review emergency room treatment records from October 2011, where Plaintiff was diagnosed with cervical radiculopathy. (*Id.* at 399).

The regulations provide that "generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. §§ 404.1527(d)(1), 916.1527(d)(1). An ALJ may rely upon the opinion of a nonexaminer over that

22

of an examining source when the nonexaminer clearly states the reasons for his differing opinion. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  But here, Dr. Swan did not have that opportunity to see and comment upon this physical impairment evidence, and his opinion is therefore not sufficient to offset that of the actual examining source.  "[W]e require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not 'based on a review of a complete case record.'" *Blakley*, 581 F.3d at 409 (*quoting Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007)); *see also* Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3.

Plaintiff also argues that the ALJ's decision to assign "greater weight" to the opinions of state agency physicians and psychiatrists was in error because their opinions did not account for the later treatment notes of Physical Therapist ("PT") Amanda Ware.  (R. 8, at 14). Social Security Ruling 06-03p indicates that opinions from "non-medical sources" who have seen the claimant in a professional capacity should be evaluated using the applicable factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  This means the opinion can be weighed using factors such as the examining relationship of the source with the plaintiff, whether the opinion is consistent with other evidence, whether the source presents relevant evidence to support the opinion, and any other factors that tend to support or refute the opinion.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  Social Security Ruling 06-03p indicates that not every factor for weighing opinion evidence will apply in every case; the evaluation of an opinion from a "non-medical source" will depend on the particular facts in each case.

Plaintiff presented to PT Ware on January 12, 2012, for care related to his right shoulder pain.  (A.R. 349).  In her examination notes, PT Ware indicated Plaintiff's prognosis was poor, and noted participation restrictions in work and playing with his son.  (*Id.* at 353-54).  Here, the ALJ's

decision provides no indication that he considered the treatment notes from Physical Therapist Ware, much less applied the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). Thus, it is difficult to reconcile the ALJ's reference to and reliance on the conclusions of the nonexamining State Agency consultants as providing substantial evidence for his RFC determination where the ALJ failed to address conflicting opinion evidence of record.  (A.R. 23).

Plaintiff also argues that the ALJ erred in assigning "greater weight" to the opinions of nonexamining State Agency psychologists, while assigning "no weight" to the opinion of consultative examiner Dr. Sprague, who opined that claimant had moderate to marked impairment of ability to handle stressors and ability to relate to others.  (R. 8, at 14-15).  Again, the ALJ's decision provides no indication that he applied the factors set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c)–supportability, consistency, specialization–when weighing the consultative physician's opinions.  It is unclear whether the ALJ reviewed Dr. Sprague's opinions against the objective medical evidence and other evidence presented of record.  While the ALJ notes the amount of weight he gives certain opinions, he does not provide any analysis of the medical opinions using the factors to support his assignments of weight.  The ALJ's function is to weigh what he finds to be adequate evidence of record and resolve conflicts therein so as to carry out the duties with which he is charged.  *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988).  The ALJ must consider all medical opinions provided in the record.  *Keeton*, 583 F. App'x at 528.

On remand, the ALJ should consider all of the medical opinions of record, and clearly explain the weight assigned to each using the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c).  The Sixth Circuit has made clear that an ALJ's noncompliance with 20 C.F.R.

§§ 404.1527(c)(2) and 416.927(c)(2) will not be excused simply because his decision is otherwise supported by substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004). "[T]o recognize substantial evidence as a defense to non-compliance with § 416.927(c)(2) would afford the Commissioner the ability to violate the regulation without impunity." *Id.* Substantial evidence cannot rectify the procedural violations committed by the ALJ. Failure to evaluate the claim according to the statutory framework will require remand of the matter. *Id.* at 544.

## IV.   CONCLUSION AND RECOMMENDATION

As explained above, the ALJ's decision is not supported by substantial evidence and should be reversed. Accordingly, **IT IS RECOMMENDED** that:

1.   The Commissioner's decision be found to be an incorrect application of the legal standard and therefore **reversed;**

2.   Plaintiff's Motion for Summary Judgment (R. 7) be **granted in part** as to Plaintiff's request for reversal of the Commissioner's decision, and **denied in part** as to the extent Plaintiff requests a court-ordered award of benefits**;**

3.   Defendant's Motion for Summary Judgment (R. 9) be **denied;** and,

4.   that Judgment be entered **reversing** the Commissioner's Decision and **remanding** the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), with instructions to the ALJ to reassess whether Plaintiff is disabled at step three of the sequential evaluation as to Plaintiff's satisfaction of the 12.05(C) listing and, if necessary, step four as to the development of Plaintiff's residual functional capacity.

Specific objections to this Report and Recommendation must be filed within **fourteen (14) days** of the date of service or further appeal is waived.  28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985).  A party may file a response to another party's objections within **fourteen (14) days** after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

Dated this 31st day of July, 2015.

**Signed By:**

*Candace J. Smith*

**United States Magistrate Judge**

G:\DATA\social security\14-106 Wells R&R.final.wpd